UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LU ANNE FEAZLE-HURT, an individual,

             Plaintiff,

     v.

TARGET CORPORATION, a foreign corporation,

             Defendant.

Case No.: 3:12-cv-00997-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Lu Anne Feazle-Hurt ("Feazle-Hurt") filed a negligence action in the Circuit Court of the State of Oregon for the County of Multnomah against defendant Target Corporation ("Target") to recover for injuries sustained when she slipped and fell in Target's Cascade Station

{KAR}

retail store ("Cascade Station"). Target timely removed Feazle-Hurt's claims to this court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Currently before the court is Target's motion for summary judgment on all of Feazle-Hurt's claims. Because no triable issues of fact exist as to whether Target's acts or omissions constituted negligence, Target's motion is granted.[1]

### Preliminary Procedural Matter

The evidence presented in support of, or in opposition to, a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56 (2013). To satisfy the requirement of authentication, as a condition precedent to admissibility, the proponent must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

As to depositions, the Ninth Circuit stated in *Orr*:

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. *See* Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e) & 30(f)(1). Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(i).

*Orr*, 285 F.3d at 774 (footnote and case citations omitted.)   Here, Feazle-Hurt submitted transcript pages from the depositions of Sam Johnson, a former Target employee, and herself. Target submitted transcript pages from the deposition of Feazle-Hurt as well.   While neither party objects to the depositions offered, the court notes that neither party's submitted excerpts include signed reporters' certificates and, therefore, are not properly authenticated.

The court views the parties' mutual offering of the deposition of Feazle-Hurt as an implied stipulation that these documents are what they purport to be.   Accordingly, the proffered transcript pages of the Feazle-Hurt deposition are authenticated and admitted.   Only Feazle-Hurt, however, offered the deposition of Sam Johnson.   Accordingly, the excerpts of Johnson's deposition are not properly authenticated.   Even if the court were to consider Johnson's testimony, summary judgment for Target is still appropriate because the content of the excerpts would not change the court's conclusion.

### Background

The following facts are not in dispute.   On May 5, 2010, Feazle-Hurt entered Cascade Station intending to purchase a greeting card.   (Feazle-Hurt Dep. 52:10-52:14).   As she walked along the main aisle that separated the checkout stands from the children's clothing department, Feazle-Hurt felt her right foot slip behind her, as if it did not have contact with the floor.   (Neel Decl. ¶ 5; Feazle-Hurt Dep. 64:11-64:16).   Feazle-Hurt fell forward and sustained injuries. (Feazle-Hurt Dep. 60:21-60:22, 65:4-65:13).

Feazle-Hurt did not see anything on the floor as she approached the scene of her fall, nor as she lay on the floor afterward.   (Feazle-Hurt Dep. 65:14-65:20).   Target employees who came to Feazle-Hurt's assistance noted that the surrounding floor was clean except for a stray merchandise tag.   (Neel Decl. ¶ 5).   The tag had detached from a "puffy ball," a children's toy on

display in the dollar section located near the store's entrance. (Neel Decl. Ex. 6-7; Baird Decl. Ex. 1, at 4). The tag was not damaged and had no foreign markings. (Neel Decl. ¶ 6). Multiple Target employees indicated that they believed the tag was "involved" in the incident in their witness statements. (Emmons Decl. Exs. 1, at 24, 3, 4). Feazle-Hurt heard Target employees identify the tag as the probable impetus for her fall. (Feazle-Hurt Dep. 65:22-65:25, 66:1-66:2, 68:3- 68:12).

Target employees are trained to monitor the condition of store premises while working and to report or remove any potential hazards. (Neel Decl. ¶ 4; Johnson Decl. ¶ 5). About ten minutes before Feazle-Hurt fell, a Target security guard walked through the same area and did not notice any tags on the floor. (Johnson Decl. ¶ 4).

### *Legal Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2013). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings to identify facts that show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

## Discussion

Oregon law governs this diversity action. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law . . . which reflects a substantial policy of the state, should be followed." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, No. 10-35137, 2013 WL 4779709, at *9 (9th Cir. June 19, 2013) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975)).

Under Oregon premises liability law, the duty that a property owner owes to an entrant depends on whether the entrant is an invitee, licensee, or trespasser. *Walsh v. C & K Market, Inc.*, 171 Or. App. 536, 539 (2000). Here, neither party disputes that, at the time of the incident, Feazle-Hurt was a business "invitee" of Target's Cascade Station store. She entered the store at Target's implied invitation to shop and potentially purchase Target's merchandise. *See Parker v. Hult Lumber & Plywood Co.*, 260 Or. 1, 8 (1971) (defining "invitee" as "one who comes upon the premises at the occupier's invitation, express or implied, upon business which concerns the occupier").

Storekeepers, such as Target, have a duty to "make their property reasonably safe for their invitees." *Hughes v. Wilson*, 345 Or. 491, 497 (2008). As a general rule, they are obligated

to exercise due diligence to discover unsafe conditions on their premises and to warn invitees of those risks. *Woolston v. Wells*, 297 Or. 548, 557-58 (1984). A storekeeper may be held liable for injuries an invitee sustains from dangers that the storekeeper knew about or, in the exercise of due care, should have known about. *Mickel v. Haines Enterprises, Inc.*, 240 Or. 369, 371-72 (1965). Specifically regarding slip-and-fall cases, the Oregon Supreme Court has held that the occupant of a business property may be liable to an invitee who falls on a foreign substance on the business's floor, if the plaintiff can prove:

> (1) that the substance was placed there by the occupant, *or* (2) that the occupant knew that the substance was there and failed to use reasonable diligence to remove it *or* (3) that the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it.

*Pribble v. Safeway Stores, Inc.*, 249 Or. 184, 187 (1968) (quoting *Cowden v. Earley*, 214 Or. 384, 387 (1958)) (emphasis added).

I. .   "Substance was Placed There by the Occupant"

Feazle-Hurt argues genuine issues of material fact remain under the first theory of liability. She contends a jury could find "the substance was placed there" by Target because Target brought the tagged merchandise into Cascade Station. This argument fails for two reasons. First, Feazle-Hurt mistakenly interprets the term "there" to refer to the premises generally, not specifically to the floor. Case law clearly interprets "there" to mean the scene of the incident. *See Swisher v. Albertson's*, Inc., 186 Or. App. 734, 738 (2003) (analyzing whether defendant grocer placed lettuce on the bagging area floor where plaintiff fell); *Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or. App. 448, 451-52 (1993) (discussing whether jury could infer defendant placed water on the floor where plaintiff fell by leaving an unattended dolly of bagged ice there); *Pavlik v. Albertson's, Inc.*, 253 Or. 370, 373-74 (1969) (considering

whether grocery employees may have inadvertently deposited the leaf of lettuce, on which the plaintiff fell, onto the floor). It is irrelevant whether Target brought the tag within the Cascade Station store's walls; the relevant inquiry is whether Target placed the tag on the ground where Feazle-Hurt fell. Second, Feazle-Hurt offers no evidence to suggest that Target actually placed the tag on the floor. Just the opposite, Feazle-Hurt's expert opines that perhaps another customer dropped the tag there. (Baird Decl. Ex. 1, at 4). In any event, there is no evidence that Target placed the tag on the ground where Feazle-Hurt fell. Accordingly, Feazle-Hurt cannot create a triable issue of fact on this first theory of liability.

II.      "Knew that the Substance was There"

On the second theory of liability, Target submitted multiple affidavits from employees stating they were not aware that the tag was lying on the floor. Feazle-Hurt presented no contradictory evidence. Accordingly, there is no genuine dispute as to whether Target actually knew the tag was in the walkway.

Feazle-Hurt, however, argues that Target was on notice that its merchandise tags were prone to falling onto the floor and thus it should have known of the risk these tags create for slip-and-fall accidents. In *Hagler v. Coastal Farm Holdings*, 354 Or. 132, 144 (2013), the Oregon Supreme Court held that a merchant may be held liable if circumstances suggest that, in the exercise of due care, the merchant should have recognized a particular display posed a risk. *Hagler*, 354 Or. at 144. The court advised "the likelihood that a particular display will cause harm to others will depend on the circumstances of each case — among them, the nature of the goods and the manner in which they are shelved." *Id.* Accordingly, where a customer slips on a blueberry, the court may assess the defendant grocer's berry display; *Rex v. Albertson's, Inc.*, 102 Or. App. 178, 180 (1990); where a customer slips on a wet leaf of lettuce, the court may

examine the defendant grocer's use of ice to preserve greens; *Diller v. Safeway Stores, Inc.*, 274 Or. 735, 737 (1976); and where a post pounder falls onto a customer's foot, the court may analyze how the defendant hardware store exhibits its post pounders; *Hagler*, 354 Or. at 133.

      Like other self-service retail stores, Target displays products so that customers can pick up, touch, and carry them. Target displays puffy balls near the front of the store in a bin accessible to the product's intended customers, children. Feazle-Hurt offers no evidence to suggest the puffy ball display itself posed any foreseeable risk to invitees. Instead, she contends that Target's use of tags on its merchandise, coupled with customers' ability to access that merchandise, generally posed a storewide danger of which Target should have been aware. In support of this proposition, Feazle-Hurt cites to the unauthenticated deposition of a former Cascade Station security guard in which he testified that he came across at least two stray tags every shift. Feazle-Hurt contends that this testimony demonstrates Target was on notice that customers handling tagged merchandise created an unreasonable slipping hazard. Even if the court were to consider this testimony, Feazle-Hurt's argument fails because it has nothing to do with the display at all, which is the focus of the case law Feazle-Hurt relies on. The security guard did not testify that he routinely found puffy ball tags, or even tags from the dollar section, on the floor. Rather, he stated that he found one or two tags each shift in the store generally, which conceivably could have originated from any tagged product displayed in any store department. Moreover, the guard testified that he found these tags throughout the store, not that they were continually strewn in the same aisle where Feazle-Hurt fell. There is no evidence to suggest this "particular display" posed a risk of harm to Target's invitees and, accordingly, there is no basis to infer that Target "should have known" Feazle-Hurt could slip. *Id.*

PAGE 8- OPINION                                                                                    {KAR}

In the absence of any particularized evidence, Feazle-Hurt submits the testimony of an expert witness who opines that the merchandise tag on the tile floor was an "unreasonably hazardous and dangerous condition" which Target "should have discovered." (Baird Decl. Ex. 1, at 2-3). The expert asserts that Target is operating "below the industry standard" because it does not have any formal policies or procedures for floor inspections. (Baird Decl. Ex. 1, at 6). Wal-Mart and Safeway both conduct regular "floor safety sweeps," unlike Target. (Baird Decl. Ex. 1, at 6). The expert, however, fails to establish any link between Target's lack of a policy and Feazle-Hurt's fall. Even if Target performed "hourly" sweeps similar to Safeway's, there is no indication that Target would have discovered the puffy ball tag. In fact, the evidence here makes irrelevant the expert's opinion because a Target employee scanned the area of the fall just ten minutes before and did not see the tag.

Furthermore, Feazle-Hurt has not introduced sufficient evidence for a reasonable jury to conclude that it is more likely than not that Target substantially contributed to her fall. *Griffin*, 125 Or. App. at 451-52. Unlike a grocer's leaning stack of jars, there is no clear causal connection between Target's acts and omissions and the tag's presence on the floor. The tag just as likely could have detached from the merchandise through no fault of Target as it could have because of some act or omission of Target. For example, a child playing with the puffy ball might have pulled it off, a shoplifter might have intentionally removed and dropped it, or a passing cart might have snagged and unhooked it. There is no evidence to establish how the tag came to be on the floor.

Moreover, there is no direct evidence that Feazle-Hurt actually slipped on the tag. No one testified to seeing Feazle-Hurt fall. Target employees who arrived at the scene noticed there was a tag on the floor, at an unspecified distance from where Feazle-Hurt lay, and speculated that

it could have caused of her fall. Feazle-Hurt testified that her foot slipped behind her as if something was blocking her shoe from gripping the floor. However, she did not notice the tag on the floor before or after her fall. The tag has no markings or damage to indicate Feazle-Hurt stepped on it.

Thus, a jury would have to speculate in order to find that the tag was on the floor because of Target's action or inaction and that it was the impetus of Feazle-Hurt's fall. Oregon courts do not permit liability findings rooted in conjecture. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* Since Feazle-Hurt has not presented facts upon which a jury could reasonably conclude that it is more likely than not that Target's tagging system or floor inspection procedures caused Feazle-Hurt's injuries, summary judgment is appropriate.

III.    Lengthy Presence Should Have Lead to Discovery

Feazle-Hurt's evidence is also insufficient to establish a reasonable inference regarding the third theory of recovery. Oregon case law recognizes that "[i]n the absence of proof from which a reasonable inference can be drawn as to how long the substance was on the floor, there is no basis for a finding of negligence." *Diller*, 274 Or. at 739. In *Van Den Bron v. Fred Meyer, Inc.*, 86 Or. App. 329, 331-32 (1987), the Oregon Court of Appeals held that a grocery store employee's testimony that he had mopped the floor about two hours before the plaintiff slipped, coupled with the plaintiff's testimony that she did not know how long the water was there but that it looked "pretty fresh," was insufficient for a jury to make a reasonable inference as to how long water had been on the grocery store's floor.

{KAR}

Similarly, here, there is no evidence of the length of time the tag sat on the floor before Feazle-Hurt fell. The only testimony about the duration of time is a Target employee's statement that he did not see the tag when he walked through the area ten minutes prior to the incident and Feazle-Hurt's concession that she does not know how long it was there. Furthermore, the tag's condition provides no evidence that allows a reasonable inference of the length of time it had been on the floor. It is just as probable that the tag fell to the floor immediately before Feazle-Hurt's accident as it is that the tag had been there for a lengthy period of time. *Weiskopf v. Safeway Stores, Inc.*, 271 Or. 630, 632 (1975) (held no clear inference can be drawn where it is just as likely that "the substance was spilled immediately before the accident as it was that it was spilled three hours previously or at any other time"). Accordingly, there is no reasonable basis for a jury to conclude that the tag sat on the floor so long that Target was negligent in failing to discover and remove it.

## Conclusion

Based on the foregoing, Target's motion (#17) for summary judgment is GRANTED.

DATED this 28th day of October.

JOHN V. ACOSTA
United States Magistrate Judge